

LAW OFFICE OF FELIX Q. VINLUAN
Felix Q. Vinluan (FV6788)
69-10 Roosevelt Avenue, 2nd Floor
Woodside, NY 11377
Tel. No. 718-478-4488
Fax No. 718-478-4588
*Attorneys for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

EMMELYN C. CALUMBA, ARLENE G. FERRERA,
EVA MARTINA O. MACHACON and CLEANDA S.
ONCINES,

<em>Plaintiffs,</em>

- against -

RAINA MASSEY and CARE WORLDWIDE, INC.,

<em>Defendants.</em>

Docket No. _____

COMPLAINT
Trial by Jury

-------------------------------------------------------------------x

**PLAINTIFFS** EMMELYN C. CALUMBA, ARLENE G. FERRERA, EVA
MARTINA O. MACHACON and CLEANDA S. ONCINES, by undersigned counsel,
respectfully allege as follows:

### PRELIMINARY STATEMENT

1.      Plaintiffs assert claims under the Trafficking Victims Protection
Reauthorization Act (18 U.S.C. §1589 and 18 U.S.C. §1590) to recover compensatory
and punitive damages arising from Defendants' unlawful conduct of forced labor and
involuntary servitude.

2.      This action arises out of a scheme by which Defendants defrauded the
Plaintiffs through false representations on immigration petitions and other immigration
documents, and perpetuated said fraudulent scheme by threats of deportation and abuse

1

of the legal process. Defendants induced the Plaintiffs into relying on their representations that Plaintiffs would be sponsored as H-1B beneficiaries and made employees of corporate Defendant. As a result, Plaintiffs relied on these misrepresentations and made themselves available or reported to work for Defendants without having been paid.

3.      To induce Plaintiffs to be sponsored as H-1B workers, Defendants falsely told them, among other things, that corporate Defendant, the immigration sponsor, had several medical/clinical research and office positions that it needed to fill.

4.      In reliance upon these and other misrepresentations, Plaintiffs agreed to be sponsored by Defendant Care Worldwide, Inc., and paid the immigration application fees required by individual Defendant to initiate the H-1B sponsorship process.   Defendant Raina Massey, acting as chief executive officer or principal officer of Defendant Care Worldwide Inc., knowingly made under oath or knowingly subscribed as true, false statements contained in immigration application forms submitted to the United States Immigration and Citizenship Services and to the U.S. Department of Labor. Defendants knowingly presented immigration petitions containing false statements as to the nature of employment of the immigration beneficiaries as well as to the beneficiaries' salaries and work assignments.

5.      Defendants knew at the outset that Plaintiffs would not be employed at all for the H-1B positions Plaintiffs were sponsored for.   After the US Citizenship and Immigration Services approved the immigration petitions on behalf of the Plaintiffs, Defendants advanced their scheme of defrauding the Plaintiffs by providing them advice that Plaintiffs needed to pay more money to Defendants as and by way of withholding

taxes in order to keep a semblance that they were maintaining their H-1B status, and to report to the office at least once a week.

6.     Defendants also threatened Plaintiffs that if they did not pay the supposed withholding taxes and to report to the office, Defendants would cancel or withdraw their H-1B sponsorships, and that they would be deported to their native country. As a result of this campaign of fraud and coercion, Plaintiffs remained in constant fear of the Defendants and initially believed they had no choice but to obey Defendants' orders.

7.     Defendants either made Plaintiffs to work, or made them to report to the office without giving them any actual job assignments. When Plaintiffs complained that they needed to do their work responsibilities for the H-1B positions they were sponsored for, and when they refused to pay the withholding taxes being demanded by Defendants, Defendants threatened to cancel or withdraw the approved H-1B petitions.

8.     As a consequence of Defendants' unlawful conduct of submitting fraudulent immigration petitions and of Plaintiffs' detrimental reliance on Defendants' misrepresentations, Plaintiffs did not receive the lawful wages and benefits they would have received had they been paid for their actual hours of work and also for the promised period of time had Defendants actually employed them.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§1331, and 18 U.S.C. §1595(a), this action arising under the Trafficking Victims Protection Reauthorization Act (TVPRA).

10.     This Court has supplemental jurisdiction over the related state and common law claims asserted herein under the doctrine of pendent jurisdiction and

pursuant to 28 U.S.C. §1367. Supplemental jurisdiction over those claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York. Venue is proper pursuant to 18 U.S.C. §1965.

### PARTIES

12.     Plaintiff Emmelyn C. Calumba ("Calumba") is an adult individual residing in Hudson County, state of New Jersey.

13.     Plaintiff Arlene G. Ferrera ("Ferrera") is an adult individual residing in Hudson County, state of New Jersey.

14.     Plaintiff Eva Martina O. Machacon ("Machacon") is an adult individual residing in Hudson County, state of New Jersey.

15.     Plaintiff Cleanda S. Oncines ("Oncines") is an adult individual residing in Hudson County, state of New Jersey.

16.     Defendant Raina Massey (hereinafter, "Massey") is, upon information and belief, the President and Chief Executive Officer, and/or director of Defendant Care Worldwide, Inc. She claims to be both a medical doctor and a doctor in clinical psychology. Upon information and belief, she is a resident of Nassau County, state of New York.

17.     Defendant Care Worldwide, Inc. ("Care Worldwide") is, upon information and belief, a New Jersey corporation registered as a foreign business corporation in the state of New York. During all times relevant, it did business at 38 West 32nd Street,

4

Suite 405, New York, NY10001.   Upon information and belief, its present corporate address is in Newark, state of New Jersey.

18.    Upon information and belief, Defendant Massey owns, manages and supervises Defendant Care Worldwide, which claims to be a clinical research site management company.

19.    Upon information and belief, Defendant Care Worldwide had gross annual revenues of at least $500,000.

20.    At all times relevant to this action, each Defendant was an employer of each Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§201 et seq.

21.    At all times relevant to this action, Plaintiffs were "employees" of each Defendant within the meaning of the Fair Labor Standards Act, 29 U.S.C.§§201 et seq.

22.    Upon information and belief, Defendant Massey has power over personnel decisions.

23.    Upon information and belief, Defendant Massey has power over payroll decisions.

24.    Upon information and belief, Defendants have the power to hire and fire employees, establish and pay their wages, set their work schedules and maintain their employment records.

25.    All of the acts alleged in this Complaint were authorized, ordered, and implemented by Defendant Massey and/or her officers, agents, and/or representatives while actively engaged in the management of Care Worldwide's business.

26.     At all times relevant to this action, Plaintiffs were engaged in commerce, the production of goods for commerce, and/or were employed in enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

27.     Upon information and belief, at all times relevant to this action, Defendants constituted a unified operation, were under common control for a common business purpose, had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and had an aggregate annual gross volume of business of at least $500,000.

28.     Upon information and belief, Defendant Care Worldwide filed a Chapter 7 bankruptcy proceeding (Case No. 13-23992-MS) in Newark Bankruptcy Court on or about June 25, 2013.

29.     Upon information and belief, the Chapter 7 bankruptcy proceeding filed by Defendant Care Worldwide was dismissed on October 15, 2013.

30.     Upon information and belief, Defendant Care Worldwide filed a second Chapter 7 bankruptcy proceeding (Case No. 13-33236-MS) on or about October 23, 2013.

31.     Upon information and belief, there is a federal complaint filed against Defendants Massey and Care Worldwide Inc. before the Southern District Court of New York for violations of, among others, human trafficking laws, FLSA, and fraudulent inducement and negligent misrepresentation.  This complaint, upon information and belief, bears docket no. 12-cv-8561 and is before District Court Judge Naomi Reice Buchwald.

32.     Upon information and belief, Defendants' counsel in the pending Southern District Court proceeding has conceded that the second bankruptcy filing by Defendant Care Worldwide would trigger automatic stay only for thirty days, and that as of December 12, 2013, there has been no motion filed in the Bankruptcy Court to extend the automatic stay.

## STATEMENT OF FACTS

33.     Defendant Massey formed and incorporated Defendant Care Worldwide to be her instrument as the immigration sponsor or employer to prospective candidates for H-1B sponsorship.

34.     Upon information and belief, Defendant Massey utilized the services of some H-1B employees of Defendant Care Worldwide, and some employment agencies and language schools to recruit candidates for Care Worldwide's H-1B sponsorship and employment.

35.     Defendant Massey represented to prospective candidates for H-1B sponsorship that her company, Defendant Care Worldwide, had many clinical trial projects in both United States and in India, and that it required the services of clinical/medical research associates and office workers to work on these projects.

(a)     Sometime in or about July 2009, at Care Worldwide's Manhattan office, Defendant Massey informed Plaintiff Calumba that her Care Worldwide Inc. could sponsor Calumba as a Quality Control Analyst in Defendants' non-clinical team.

(b)     Sometime in or about August 2009, at Care Worldwide's Manhattan office, Defendant Massey informed Plaintiff Ferrera that her Care Worldwide Inc. could sponsor Ferrera as a Finance Officer or as Budget Officer.

(c)     Sometime in or about August 2009, at Care Worldwide's Manhattan office, Defendant Massey informed Plaintiff Machacon that her Care Worldwide Inc. could sponsor Machacon as a Quality Assurance Officer for Equipment.

(d)     Sometime in or about July 2009, at Care Worldwide's Manhattan office, Defendant Massey informed Plaintiff Oncines that her Care Worldwide Inc. could sponsor Oncines as a Quality Assurance Manager.

36.     Defendant Massey interviewed prospective candidates for H-1B sponsorship and employment, and made the decision whether a candidate is qualified for H-1B sponsorship.

37.     After qualifying a candidate, Defendant Massey required the candidate to shell out and pay what she termed "immigration application fees", which would include USCIS filing fees, immigration lawyer's fees, and credential evaluation fee. These "immigration application fees" would normally be in an amount not less than three thousand five hundred dollars ($3,500).

38.     Plaintiffs borrowed money from family and friends to be able to pay the immigration application fees required by Defendants.

(a)     On or about August 4, 2009, at Care Worldwide's Manhattan office, Plaintiff Calumba gave Defendant Massey a check in the amount of three thousand five hundred dollars ($3,500) as and by way of the H-1B immigration sponsorship fees demanded by Defendant Massey.

(b)     On or about September 2, 2009, at Care Worlwide's Manhattan office, and pursuant to Defendant Massey's requirement, Plaintiff Ferrera gave her friend's credit card and authorization to Defendant Massey who then charged the credit

card in the amount of $3,500 as and by way of Ferrera's H-1B immigration sponsorship fees.

(c)     On or about September 18, 2009, at Care Worldwide's Manhattan office, Plaintiff Machacon gave Defendant Massey cash amounting to four thousand five hundred dollars ($4,500) as and by way of H-1B immigration sponsorship fees ($3,500) and initial training fee ($1,000) demanded by Defendant Massey.

(d)     On or about July 31, 2009, at Care Worldwide's Manhattan office, and pursuant to Defendant Massey's requirement, Plaintiff Oncines gave Defendant Massey cash amounting to three thousand five hundred dollars ($3,500) as and by way of the H-1B immigration sponsorship fees.

39.     After receiving the immigration application fees from H-1B candidates, Defendant Massey did not immediately utilize the fees she received for H-1B sponsorship purposes.

40.     In the case of herein Plaintiffs, they had to make several follow-ups with Defendant Massey. and it took several months after receipt of the money by Defendant Massey before she asked her immigration lawyers to prepare and file Plaintiffs' H-1B petitions.

41.     In fact, Plaintiffs had to threaten to withdraw their H-1B sponsorship and to demand the refund of their immigration fees if they did not receive any proof that Defendants had filed their H-1B sponsorship petitions.

42.     Defendant Massey assured Plaintiffs that their H-1B petitions had already been filed, and that if Plaintiffs would cause the withdrawal of their H-1B petitions, they (Plaintiffs) would encounter immigration troubles.  In fact, Defendant Massey even

threatened to call the police and to report Plaintiffs Calumba and Oncines if the latter did not believe that the H-1B petitions had already been filed.

43.     Upon information and belief, Defendant Massey was the signatory to the H-1B immigration documents and petitions submitted by her immigration lawyers to the U.S. Department of Labor and to the U.S. Citizenship and Immigration Services. whereby she attested under penalty of perjury that the H-1B beneficiaries, including herein Plaintiffs, would be working for Defendant Care Worldwide at a rate at least equal to or greater than the prevailing wage rates.

44.     Upon information and belief, there were several H-1B petitions by Defendants that were approved by the USCIS.

(a)     On or about February 19, 2010, the USCIS approved Defendants' H-1B petition on behalf of Plaintiff Calumba.

(b)     On March 1, 2010, Defendant Massey informed Plaintiff Ferrera that the latter's H-1B petition had been approved.

(c)     In or about the third week of March 2010, Plaintiff Machacon found out from the USCIS case status online system that Care Worldwide's H-1B petition in her behalf had been approved.

(d)     On or about April 30, 2010, Defendants' immigration lawyer advised Plaintiff Oncines that her H-1B petition had been approved.

45.     After their H-1B petitions had been approved, each Plaintiff went to meet with Defendant Massey and inquired when they could start working.

46.     On or about April 19, 2010, Plaintiffs Calumba and Ferrera went to Defendant Massey's office and reported for work. They were told by Defendant Massey

that for them to maintain their H-1B status, they had to give her money to pay the taxes that were supposed to be withheld from their salaries had they been actually working. Defendant Massey told Plaintiffs Calumba and Ferrera that if they did not agree to pay her more money supposedly for tax payments, Defendant Massey could and would withdraw their H-1B sponsorship and Plaintiffs Calumba and Ferrera would be subject to deportation.

47.     On or about May 15, 2010, Plaintiffs Machacon and Oncines went to Defendant Massey's office and discussed about their H-1B employment. They were told by Defendant Massey that for them to maintain their H-1B status, they had to give her money to pay the taxes that were supposed to be withheld from their salaries had they been actually working. Defendant Massey told Plaintiffs Machacon and Oncines that if they did not agree to pay her more money supposedly for tax payments, Defendant Massey could and would withdraw their H-1B sponsorship and Plaintiffs Machacon and Oncines would be subject to deportation.

48.     Plaintiffs informed Defendant Massey that they could not afford to pay her more money as it should have been Defendant Care Worldwide that should be withholding and remitting their taxes from their earned incomes, if and when they actually started working for Care Worldwide.

49.     Even as she demanded tax payment money from Plaintiffs, Defendant Massey likewise required Plaintiffs to report to work at least once a week to give a semblance of their H-1B employment.

50.     Pursuant to Defendant Massey's instructions, Plaintiffs Calumba and Ferrera reported to work on April 22, 27, and 29, 2010, and also on May 6, 13, 18, and 27, 2010, and made themselves available to work.

51.     Pursuant to Defendant Massey's instructions, Plaintiffs Machacon and Oncines reported to work on May 18 and 27, 2010, and also on June 2, 10, 17, and 22, 2010, and made themselves available to work.

52.     During the days that Plaintiffs reported at Defendants' Manhattan office, Defendant Massey was not in the office and her staff did not give them any instructions regarding any work that each Plaintiff should do.  In at least a couple of times that each Plaintiff reported to work, Defendants' office was closed.

53.     From April through June 2010, Plaintiffs Calumba and Ferrera each made several phone calls, left word with Defendants' staff,   and sent email messages to Defendant Massey about their respective  H-1B employment.   Their communications were never answered by Defendant Massey.

54.     From May through June 2010, Plaintiff Machacon left messages for Defendant Massey to contact her regarding her H-1B employment.  On June 24, 2010, Defendant Massey emailed and called Plaintiff Machacon to bring her filled-out offer letter and her payment for her taxes.

55.     From May through June 2010, Plaintiff Oncines left messages for Defendant Massey to contact her regarding her H-1B employment.  On June 24, 2010, Defendant Massey called up Plaintiff Oncines to meet with her on July 2, 2010.

56.     On July 2, 2010, Defendant Massey told Plaintiff Oncines to return with a notarized letter of intent to continue with her H-1B employment and to bring the payment

for taxes that would be due allegedly as though Plaintiff Oncines was working for Defendant Care Worldwide.  Defendant Massey reminded Plaintiff Oncines that if she was not willing to give her the tax payments, Defendant Massey would withdraw her H-1B sponsorship.

57.     After reporting for several days and not being given any actual work assignments and responsibilities, and after being reminded to pay the equivalent of their withholding taxes as though they had actually been employed and compensated, Plaintiffs came to realize that Defendants did not really have employment for them, and that Defendants merely wanted to exact more money from them.  Agreeing to Defendant Massey's instruction for them to give her money as tax payments would be engaging in fraud, at their own expense.

58.     Upon information and belief, Defendant Massey, after realizing that none of the Plaintiffs would be willing to pay her more money, wrote each Plaintiff on or about July 13, 2010, and told them that their H-1B employment with Defendant Care Worldwide was terminated.

59.     As a result of Defendants' decision not to provide employment to herein Plaintiffs, Plaintiffs' H-1B status has been jeopardized, and each of them is in danger of being subjected to removal proceedings.

60.     Plaintiffs suffered emotional distress due to both the Defendants' coercive tactics resulting in their forced labor, and to their immigration status being put in jeopardy.

61.     The emotional effects suffered by Plaintiffs include disrupted sleeping, nightmares, ongoing feelings of fear, difficulty developing trust, anxiety, depression, difficulty concentrating and stress.

## FIRST CAUSE OF ACTION

Trafficking Victims Protection Act of 2003 ("TVPA")

Forced Labor, 18 U.S.C. §1589

62.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 61 as if set forth fully herein.

63.     Plaintiffs bring this claim against both Defendants.

64.     This claim is brought under 18 U.S.C. §1595 of the Trafficking Victims Protection Act.

65.     Defendants subjected Plaintiffs to forced labor in violation of 18 U.S.C. §1589.

66.     Defendants knowingly obtained Plaintiffs' labor and services by subjecting Plaintiffs to threats of serious harm of themselves, including deportation by immigration and law enforcement officials and loss of immigration status, in violation of 18 U.S.C. §1589(2).

67.     By threatening Plaintiffs with deportation and the loss of their immigration status, Defendants obtained the labor of Plaintiffs through abuse and threatened abuse of law and the legal process in violation of 18 U.S.C. §1589(3).

68.     Defendants caused Plaintiffs to report to work and to make themselves available to work at their Manhattan office without any wages at all, by threatening them with cancellation or withdrawal of their H-1B sponsorships and/or deportation.

14

69.     Defendants knowingly obtained Plaintiffs' labor and services by using a scheme, plan and pattern intended to cause Plaintiffs to believe that, if they left Defendants' employ, they would suffer serious harm, in violation of 18 U.S.C. §1589(4).

70.     As a result of the above violations, Plaintiffs suffered damages.

71.     Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial and any other relief deemed appropriate, including reasonable attorney's fees.

## SECOND CAUSE OF ACTION

Trafficking Victims Protection Act of 2003 ("TVPA")

Involuntary Servitude, 18 U.S.C. §1590

72.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 71 as if set forth fully herein.

73.     Plaintiffs bring this claim against both Defendants.

74.     This claim is brought under 18 U.S.C. §1595 of the Trafficking Victims Protection Act.

75.     Defendants knowingly recruited and harbored Plaintiffs for the purpose of subjecting them to involuntary servitude, in violation of 18 U.S.C. §1590.

76.     Defendants knowingly caused or coerced Plaintiffs to enter into debt in order to raise money and pay them the unlawfully-required immigration application fees and training fees.

77.     Defendants knowingly caused Plaintiffs to remain in their employment for fear that if they left, they would not be able to pay back their indebtedness to persons who lent them money to pay Defendants' fees.

78.    Defendants knew that Plaintiffs would work for them for even at low wages on account of the fact that they held Plaintiff's H-1B sponsorships, and also on the fact that Plaintiffs had incurred significant debts to be sponsored by them.

79.    Defendants engaged in acts including, but not limited to, psychological coercion, abuse and threatened abuse of the legal process, to exact work or service from the Plaintiffs which the Plaintiffs had not offered voluntarily.

80.    As a result of the above violations, Plaintiffs suffered damages.

81.    Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial and any other relief deemed appropriate, including reasonable attorney's fees.

### THIRD CAUSE OF ACTION

New York Labor Law ("NYLL) Minimum Wage

N.Y. Lab. Law §652

82.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 81 as if set forth fully herein.

83.    Defendants knowingly, willfully and intentionally failed to compensate Plaintiffs the applicable minimum hourly wage in violation of N.Y. Lab. Law §652.

84.    Pursuant to N.Y. Labor Law §§198.1-a and 663, an employer who willfully fails to pay wages required by the Minimum Wage Act shall be liable, in addition to the amount of any under-payments, for liquidated damages equal to twenty five percent of the total of such underpayments found to be due the employee.

85.    Because of Defendants' willful violation of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages

and an amount equal to twenty-five percent of their unpaid wages in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Fraudulent Inducement

86.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 85 as if set forth fully herein.

87.     Defendants knowingly made continuing misrepresentations and material omissions of fact, which were false to Plaintiffs regarding the (a) nature of their immigration sponsorship, and (b) Plaintiffs' employment, work responsibilities and compensation to the effect that each would be paid in accordance with laws of the United States.

88.     The representations and substantive omissions by Defendants, as alleged herein, including the nature of work and compensation rate of each of the Plaintiffs, were material and untrue.

89.     Defendants made or caused to be made the material misrepresentations and omissions identified above with knowledge or belief of their falsity or with reckless disregard for their truth.

90.     Defendants made or caused to be made the material misrepresentations and omissions with the intent to induce the Plaintiffs to rely upon them so they would agree to be sponsored by Defendant Care Worldwide and to work for or continue to work for Defendants.

91.     In justifiable reliance on the material misrepresentations and omissions made or caused to be made by Defendants, Plaintiffs agreed to be sponsored by Defendant Care Worldwide and to work for Defendants.

92.     Had Plaintiffs known of the material misrepresentations and omissions made or caused to be made by Defendants, Plaintiffs would have not allowed themselves to be sponsored by Defendants through the immigration process and would have not paid the immigration application fees and training fees.

93.     Because of Defendants' abuse of their position of trust as Plaintiff's immigration sponsor, Plaintiffs, even in the exercise of reasonable due diligence, were ignorant of the true facts concerning the nature of their H-1B sponsorship and employment, and believed that Defendants were conducting themselves honestly and properly with each of them.   Plaintiffs accordingly relied upon Defendants' conduct, and acted in such reliance as described above, all to their injury.

94.     Defendants' behavior constitutes an intentional fraud.

95.     As a direct and proximate result of Defendants' acts, Plaintiffs have been damaged in an amount to be determined at trial, but which amount is believed to be no less than one million dollars.

96.     The foregoing acts and omissions by Defendants constitute oppressive, malicious, and deceptive conduct justifying an award to Plaintiffs of punitive and exemplary damages, attorney's fees and costs.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

97.     Plaintiffs hereby refer to and incorporate each and every allegation set forth in paragraphs 1 through 96 of this Complaint as though fully set forth herein.

98.     Defendants, and each of them, being not only the employer of, but the immigration sponsor of the Plaintiffs, had a duty to give correct information to each of the Plaintiffs.

99.     Defendants made false representations to Plaintiffs, as stated above, that each of them knew or should have known was incorrect or false.

100.    Defendants knew that the information supplied in their representations, particularly with regard to the terms and conditions of Plaintiffs' employment, and more especially, with regard to the offered wage rates, was desired by the Plaintiffs for the serious purpose of their maintaining their nonimmigrant status and obtaining their H-1B status in the United States.

101.    Defendants showed willful, conscious, wanton and reckless disregard for Plaintiffs' rights and for the deleterious consequences and unjust hardship placed upon Plaintiffs as a result of the representations of Defendants.

102.    Plaintiffs intended to rely and act upon the information supplied in Defendants' representations.

103.    Plaintiffs reasonably relied upon Defendants' misrepresentations, to their detriment.

104.    As a direct and proximate result of Defendants' acts, Plaintiffs have been damaged in an amount to be determined at trial, but which amount is believed to be no less than one million dollars.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief as against Defendants:

1.  Declaratory and injunctive relief;

2.  Compensatory damages;

3.  Punitive damages;

4.  Liquidated damages as authorized by FLSA, 29 U.S.C. §216;

5.  Attorneys' fees and costs;

6.  Such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on each and every claim set forth herein.

Dated: Woodside, New York.
         December 16, 2013.


Yours, etc.


LAW OFFICE OF FELIX Q. VINLUAN


By: _____

Felix Q. Vinluan (FV6788)
69-10 Roosevelt Avenue, 2nd Floor
Woodside, NY 11377
Tel. No. 718-478-4488
Fax No. 718-478-4588
Email: fqvinluan@yahoo.com

*Attorneys for the Plaintiffs*

## VERIFICATION

The undersigned, an attorney duly admitted to practice law in the state of New York and in the Southern District Court of New York, under penalty of perjury, hereby affirms and verifies that:

I am the attorney for the Plaintiffs Emmelyn C. Calumba, Arlene G. Ferrera, Eva Martina O. Machacon and Cleanda S. Oncines;

I have read and know the contents of the foregoing Complaint; that the same are true to the knowledge of the undersigned, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The reason this verification is made by the undersigned counsel, and not the plaintiffs, is because plaintiffs do not reside in and are not readily available within the county wherein I maintain my office for the practice of law, and the undersigned is in possession of the salient papers in connection with the action herein.

December 17, 2013.   Woodside, NY.

FELIX Q. VINLUAN